Hammond *v.* Morrell.

HAMMOND *& al. versus* MORRELL.

When a grant of land, made jointly by Maine and Massachusetts, contains a reservation for the support of schools and of public worship within the tract, the right and duty of protecting the reserved part against trespassers belong exclusively to this State, until the beneficiaries shall come into being.

The fee of one-half of such reserved land is held by this State in trust.

The State has the right of causing the reserved part of the tract to be severed from the residue by a course of prescribed proceedings, and to be set off into lots, for the purposes specified in the grant.

By the prescribed notice given to the grantees of the residue, and by the

opportunity given them to be heard in the proceedings for the separation, they are bound by the proceedings in the process.

It is not competent for such grantees, after the separation of the lots, to object that Massachusetts was not a party to the process.

The lots, when thus set off, are deemed to be in the legal possession of the State, until vested in those for whose benefit they were reserved.

In an action brought by the State, for trespass upon such lots, the whole damage may be recovered, and it is no defence, in whole or in part, that Massachusetts has not joined in the suit, or interposed any claim.

ON FACTS AGREED.

ASSUMPSIT to recover the sum of $644,65 paid to the defendant for stumpage of logs cut upon a township of wild land.

The township was granted in 1832, by Massachusetts and Maine to Jabez Bradbury by joint deed, in which was the usual reservation for public uses. The plaintiffs showed a regular deraignment of the same title to themselves.

The County Commissioners petitioned the District Court to have the reserved lands set off, in pursuance of the statute of this State; and thereupon the proceedings prescribed by the statute were had, and location of the same was made into lots for the purposes prescribed in the grant. The location was duly confirmed.

The plaintiffs, disregarding that location, and claiming that it was void, granted a permit to Wm. Jameson to cut logs upon the whole township during the logging season of 1849 and 1850, and A. S. Patten, Esq., Agent, having the care and custody of the public lands in the county, also gave Jameson a permit to cut logs during the same season upon the said public lots.

The amount of stumpage for logs cut by Jameson on such lots, was $669,65, of which sum $25 was paid in advance to Patten, leaving due the sum of $644,65.

The plaintiffs and the defendant, as Land Agent of the State, both claiming that stumpage, the parties agreed, that the same should be paid by Jameson to the defendant, who should hold the same to await the decision of the title to it. If said location is valid, so as to entitle the State to the same, the plain-

tiffs are to become nonsuit, otherwise a default is to be entered.

*A. W. Paine,* for the plaintiffs.

1. The question is whether the legislature of Maine, have a right to interfere, without the consent of Massachusetts, to locate the public lots.

It will not be denied, that in case of private grants between individuals, such an interference is not warranted by any legal principle.

The reservation is a keeping back of so much of the title as is not conveyed, and the estate reserved is of course still in the grantor. Like all other property it is constitutionally protected against invasion, and can only be taken away for public purposes and upon payment of reasonable compensation. In matters of contract and rights to property, the rights of sovereign states are in no respect different from those of individuals. The same law must give construction to both.

The rights of Massachusetts, as a landholder in Maine, are to be governed by the law regulating the rights of private citizens. This is, not only the well established principle of law, but it is a provision guarantied to Massachusetts by the articles of separation in the "first" article, as also in the "eighth."

2. The articles of separation prohibit the exercise of such authority as is here claimed and exercised by the State of Maine. These provide that "the rights of Massachusetts to their lands * * * and the remedies for the recovery thereof shall continue the same as they now are in the Commonwealth," and "for the maintenance of its rights and recovery of its lands, the Commonwealth shall be entitled to all proper and legal remedies," &c. and "all rights of action for or entry into lands * * * shall remain in the Commonwealth, to be enforced or disposed of as the Commonwealth may determine."

The reservations, then, are by these provisions to remain sacredly the property of Massachusetts, without interference on the part of Maine. All right on the part of Maine is

taken away from them, so far as the Massachusetts grant goes. The sole right to regulate the location is then in Massachusetts.

And this is the test question. If Massachusetts has a right to legislate on the subject, Maine has not. That she has such a right the whole tenor of the article goes to prove.

3. The clause provides that the rights of the Commonwealth and the *remedies* shall remain the same as then existed. The mode of enforcing the reservations or locating them is provided by Stat. of Feb. 26, 1811; Mass. Laws, vol. 4, page 209.

To the conclusion drawn from this course of reasoning, we are met by the authority of this Court in *State* v. *Cutler*, 16 Maine, 349.

Of this case it is to be remarked, that the Court do not pretend to base their decision on legal principles, unless it be one of the rights of sovereignty to seize and hold all it can grasp.

The lots were *there* legally located according to the Massachusetts statute, and no question of location arose. The title being admitted, *and in abeyance*, the State was authorized to protect the property for the benefit of the future *cestuis que trust* not yet *in esse.*

The defendant *there* was but a mere trespasser, a wrongdoer at best, and having no claim of right: *here* the party claiming has the right, and a perfect right, until the Commonweath, by legal means, sees fit to exercise the power which she has reserved.

The difference is the same with that, between protecting a minor's property from thieves and stealing it yourself.

The language of the Court in *Dillingham* v. *Smith*, 30 Maine, 380, supports our position. They speak of "*reserving* the title," "*retaining* the right" to locate, &c., making itself trustee. Such they contend is the import of *State* v. *Cutler*. Here, however, the State never had the title. Of course there were no *rights* to *retain* or reserve.

*Bradbury*, for the defendant.

TENNEY, J. — The plaintiffs hold under Jabez Bradbury, who took a joint deed from the Commonwealth of Massachusetts, and the State of Maine, dated Oct. 24, 1832, of a township of land, situated in the County of Piscataquis, in which was reserved one thousand acres of land for public uses averaging in situation and quality, with the other land in said township." It is admitted by the plaintiffs, that by a statute of this State, and the proceedings under it, the reserved lands, on which the timber was cut, that is the foundation of the present controversy, was located and set apart from the residue of the township. But they deny that the statute and proceedings are valid so far as they purport to affect the part of the township and the reservation therein, which belonged to Massachusetts.

It has been decided that this State is entitled to the custody and possession of the lots reserved for the support of education and public worship, in a township granted by the Commonwealth of Massachusetts, before the separation of this State, until those come into being, for whose benefit the reservation was made. *State* v. *Cutler*, 16 Maine, 349. And by the statute of this State of March 28, 1831, chap. 510, sect. 9, which was in force at the time this township was granted, the Land Agent was authorized and directed, to take care of the public lots which had been, and which should thereafter be reserved for public uses, in the several townships, until the fee should vest in the town or otherwise, according to the force of the grant, and preserve the same from pillage and trespass. And this provision is incorporated into the R. S. c. 3, sect. 45.

The title to these reserved lands did not pass to the grantees of the other portions of the townships. *Dillingham* v. *Smith*, 30 Maine, 370. The custody and possession of these lands being in this State exclusively, and for the purposes of securing them from depredations, there is involved the right of the State to do whatever is necessary to secure this object. This may be done in no other mode, than by a severance of the part reserved from the residue; or by a prohibition to take from the township any timber or other property, which may

be thereon. The statute of 1842, chap. 33, sect. 21, has provided that these reservations may be run out and located by a committee to be appointed by the District Court in the county where the land lies, and the proceedings are to be according to the mode prescribed in the Revised Statutes, chap. 122. The location is to be preceded by a notice in some newspaper in the State, and by posting up notifications, thirty days at least prior to the making of such location.

This notice being constructively at least to all who are the owners of townships, having lands so reserved in them, they become parties to the proceedings. The land which has been granted to them is subject to the jurisdiction of this State, and a partition of the township, when portions are held in common by them and others, according to the laws thereof, to which they cannot object, must be held as binding upon their rights according to their provisions. They have the opportunity of appearing, and being heard, in the location of the reserved lands. As tenants in common, they can demand that their rights should be respected and preserved. And they are presumed to have sustained no injury.

The grantees of townships, having in them a reservation of lands for public uses, have no interest in the part reserved, and they cannot invoke the rights of those in whom the fee legally rests, to dispute the power of this State over such lands. *Shapleigh* v. *Pillsbury,* 1 Greenl. 271.

Massachusetts is not represented in the dispute now before us, and the plaintiffs cannot take the objection that her rights are abridged in the location, unless it in some way interferes with their own, in which they can now be heard. The grant to the one under whom the plaintiffs claim, was while the statute gave to the Land Agent of this State, the care of the reserved lands ; there was the reservation therein of one thousand acres, in very nearly the terms of the statute of this State, passed in 1828, chap. 393, sect. 4.

The Commonwealth of Massachusetts have indicated no intention to interfere with the location of lands, reserved in the joint deeds given by it and this State, and as the lands are to

be under the care of this State, until those to be benefited by them come into existence, it is a very remote contingency, that there will ever arise any objection on the part of Massachusetts, especially if the object intended to be secured by the law of this State, providing for the location of such lands, shall be effectual.

The plaintiffs directed the timber to be taken from the entire township, thereby depriving the Commonwealth of Massachusetts, of the power to make a location of the reserved lands, so that they can be in the condition in which they were, previous to removal of the timber.

The acts of the plaintiffs in removing the timber from every part of the township, if no division had been made, without taking the steps provided by the Revised Statutes, chap. 129, sect. 7, were unlawful, and they are not entitled to that part of the timber, which is in proportion to the whole, as the reserved lands are to the entire township. They have no title to the value of this timber, by showing, that another party, to whom they are strangers, is not concluded by the location of the reserved lands. *Chambers* v. *Donaldson & al.* 11 East, 65, wherein it is said by the Court, " if he, (one sued for trespass upon lands,) plead soil and freehold in another, he must also show, that he had authority of that other." *Merrill* v. *Burbank*, 23 Maine, 538.

The fee of one-half of the reserved lands being in this State as trustee, and having the possession and custody of the other half, for the purpose of preserving it from pillage and trespasses, and the lands being located in proceedings, in which the plaintiffs are parties, it is not for them to treat those proceedings as a nullity.

*Plaintiffs nonsuit.*